UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
LONG ISLAND NEUROSURGICAL
ASSOCIATES, P.C.,

                       Plaintiff,                    Civil Action No.:
                                                                     2:18-cv-00081-DRH-AYS

       -against-

HIGHMARK BLUE SHIELD and REED SMITH LLP,

                       Defendants.
----------------------------------------------------------------X

## **AMENDED COMPLAINT**

By way of this Complaint, and to the best of its knowledge, information and belief, formed upon a reasonable inquiry under the circumstances, Plaintiff, Long Island Neurosurgical Associates, P.C. ("LINA"), brings this action against Defendants, Highmark Blue Shield ("Highmark"), and Reed Smith LLP (the "Employer"). The Employer sponsors the Group Benefits Program under which Emily Marmo, Highmark ID Number RDM120491146001 ("Emily"), a patient of Plaintiff LINA, received health care coverage, and, upon information and belief, is a self-funded Plan (meaning it paid the costs of health care for employees out of its own assets).  Upon information and belief, the Employer is the Plan Administrator.  Highmark is the Claims Administrator and Third-Party Administrator ("TPA") for the Employer.

1.  This is an action under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and its governing regulations, concerning Highmark's under-reimbursement of LINA for surgical services involving: (i) a bilateral frontotemporal parietal craniotomy for craniofacial repair of multiple sutural synostosis including bilateral coronal sutures, sagittal sutures, and metopic suture, (ii) autologous bone cranioplasty for reconstruction of skull defect

greater than 5 centimeters, a very difficult procedure; and (iii) right and left myocutaneous transfer and suspension of temporalis muscles with bilateral myocutaneous flaps.

2. The patient, Emily, a 4-year old girl, born on July 2, 2012, had her first craniofacial reconstruction in 2012. Given her expected growth and disease process, her cranial sutures continued to close prematurely, requiring this second stage operation. This defect, left untreated, causes severe facial deformity, orbital crowding, and craniocephalic disproportion. This places her at risk for visual disturbance, developmental delay, secondary chiari malformation, headaches, and neurologic impairment.

3. Emily was admitted to Cohen Children's Medical Center in New Hyde Park, New York (the "Hospital") on or about January 12, 2016 with multisultural synostosis and worsening cranial deformity.

4. Steven J. Schneider, M.D. (Dr. Schneider"), a physician of Plaintiff, examined Emily and determined that she required surgery to treat her condition.

5. Dr. Schneider, Emily's physician, was one of the only pediatric neurosurgeons with privileges at the Hospital who could perform this complex surgery. The only other pediatric neurosurgeons with privileges at the Hospital who could perform this surgery are also physicians of LINA.

6. Dr. Schneider is an officer of LINA and is a pediatric neurosurgeon with extensive specialty training in the field of pediatric neurosurgery.

7. Dr. Schneider graduated from Baylor College of Medicine where he also did his residency. He did his fellowship in pediatric neurosurgery at New York University School of Medicine. He is board certified by the American Board of Neurological Surgery and the Pediatric Board of Neurological Surgery. He is co-chief of pediatric neurosurgery at Cohen's

Children's Medical Center and a clinical assistant professor at Hofstra University School of Medicine.

## JURISDICTION

8. The Court has subject matter jurisdiction over LINA's ERISA claims under 28 U.S.C. § 1331 (federal question jurisdiction).

9. The Court has personal jurisdiction over the parties because LINA submits to the jurisdiction of this Court, and each Defendant, Highmark and Employer, systematically and continuously conducts business in the State of New York, and otherwise has minimum contacts with the State of New York sufficient to establish personal jurisdiction over each of them.

10. Venue is appropriately laid in this District under 28 U.S.C. § 1391 because (a) Highmark resides, is found, has an agent, and transacts business in the Eastern District, (b) Highmark conducts a substantial amount of business in the Eastern District, including marketing, advertising and selling insurance products, and insures and administers group healthcare insurance plans both inside and outside the Eastern District, including from offices located in the Eastern District, and (c) upon information and belief, the Employer transacts business in the Eastern District.

## PARTIES

11. Plaintiff LINA is a professional corporation with offices at 410 Lakeville Road, Suite 204, New Hyde Park, New York 11042. It is engaged in the practice of neurosurgery, including pediatric neurosurgery.

12. Defendant Highmark Blue Shield is a health care insurance company with offices located in Pittsburgh, Pennsylvania and offers Highmark-branded health care insurance in the State of New York and contiguous counties.

13. Defendant Reed Smith LLP has a self-funded plan providing health care insurance benefits to its employees. Upon information and belief it is administered by a benefits department within its company who function as the Plan Administrator and the Plan Sponsor. It has offices in New York, New York.

14. Upon information and belief, Emily's plan has a Summary Plan Description ("SPD") that provides the benefits department sole and absolute discretion to administer, apply, and interpret the Plan established by the Employer and to decide all matters arising in connection with the operation or administration of the Plan. Without limiting the generality of the foregoing, the Employer and/or its duly authorized designees, including the Appeals Committee with regard to benefit claim appeals, have the sole and absolute discretionary authority to: take all actions and make all decisions with respect to the eligibility for, and the amount of, benefits payable under the Plan.

## FACTUAL ALLEGATIONS

15. On January 12, 2016, Emily, a patient of Dr, Schneider and a beneficiary of the Employer, underwent surgery for a bilateral frontotemporal parietal craniotomy.

16. Dr. Schneider performed the surgery on January 12, 2016 at the Hospital.

17. After the surgery, for the medical services rendered on January 12, 2016, LINA submitted an invoice under: (i) CPT Code 21175 with modifier 80 in the amount of $24,166.50, but Highmark allowed only $888.23 thereof; (ii) CPT Code 15732 (2 units at $16,500 each) in the total amount of $33,000.00, but Highmark allowed only $2,461.10 thereof; and (iii) CPT Code 61559 with a modifier 22 in the amount of $66,000.00, but Highmark allowed only $5,489.70 thereof.

4

18. The modifiers 22 and 80 indicate that it was a complex, difficult, risky surgical procedure.

19. The total amount billed was $123,166.50; the total amount allowed was only $8,839.03. Emily's co-insurance and deductible totaled $3,780.32, resulting in a total payment to LINA of $5,088.71.

20. Highmark's explanation of benefits ("EOB") dated February 29, 2016 stated that LINA was out of network and that Emily was responsible for the amount not covered. It reinforced that it provides the administrative claims services only and advised LINA to refer to the benefit booklet or agreement which it never provided to LINA despite LINA's requests therefor.

21. LINA's billing company, Business Dynamics ("BD"), filed several appeals to Highmark. In the First Appeal dated April 7, 2016, BD stated that the reimbursement rates are based on the usual and customary treatment charges for the specialty and the geographic region where the treatment was provided. It further stated that the payment received does not appear to be comparable to rates charged for this service locally and no information was given to support that the reduction from the amount billed was correct. BD requested that the reductions be reversed and that Highmark submit the applicable policy language which justifies the reduction as well as the data used to establish the reimbursement rate.

22. Highmark denied LINA's request for additional reimbursement and did not provide the documentation requested.

23. On October 7, 2016, BD sent a Second Level Appeal and reiterated that Highmark failed to document the applicable fee schedule and to present the policy guidelines supporting the payment method. BD also wrote that it confirmed that the claims should have been processed based on what is acceptable throughout the nation, which is the 80th percentile of FairHealth.

BD included the benchmarks for Highmark's review and requested that the claim be reprocessed and that the appeal be reviewed by a qualified professional.

24.     Highmark denied BD's Second Level Appeal in a letter to BD dated October 17, 2016. Once again, Highmark failed to document the applicable fee schedule and to present the policy guidelines supporting the payment method.  BD again made the same requests to Highmark that were included in the letter dated October 7, 2016.

25.     Highmark sent a letter to BD dated January 6, 2017 indicating that the patient was only entitled to two levels of appeal and that since the two levels of appeal were received on July 12, 2016 and September 21, 2016, all appeals were exhausted.  It added that Highmark could not therefore review BD's request for an additional appeal and that under ERISA, providers are not able to file an appeal on behalf of a patient without consent.  However, Emily's parents did sign the appropriate documentation and same was never requested prior to this letter.  Nevertheless, LINA did provide such consent to Highmark.  As for the pricing for services, Highmark stated that when covered services are provided outside of the geographic area by non-participating providers, the plan allowance is based upon the prices established by the local Highmark licensee.  That suggests that Highmark, as TPA of the Employer, established the rates, but it did not provide guidelines or the SPD.  As such, LINA contends that the reimbursement rates were arbitrary and unreasonable.

26.     Dr. Schneider sent a letter explaining the surgery to Highmark. In a response letter dated February 21, 2017 to Dr. Schneider, Highmark stated that the claim was reviewed and that the additional information submitted by Dr. Schneider did not substantiate the complexity or necessity for extended time to warrant additional reimbursement for CPT Code 61559 22. However, no justification was provided for this conclusion of Highmark.

6

27. In all denial letters from Highmark, Highmark insisted that the claims were processed correctly. However, there was no explanation as to the rationale for how the processing was made or the terms of the SPD Highmark purportedly followed.

28. On April 15, 2017, LINA's outside counsel sent an appeal letter to Highmark requesting that it reprocess the claim. Highmark responded on December 4, 2017 that the claim was "processed correctly in accordance with the non contracted provider allowance established under the member's benefits agreement," but it did not provide a copy of that agreement as previously requested by BD. It further stated that the member had exhausted both levels of appeals and had exhausted its remedies for additional reimbursement.

29. The SPD governing Emily's plan was never provided and Highmark cannot therefore justify Highmark's reimbursement of out-of-network providers based on the "member's benefits agreement." The "allowed amount" is presumably defined in the SPD for an out-of-network provider as "based on the Employer's payment rate of allowed charges to a network provider."

30. This response from Highmark is therefore ambiguous, arbitrary and not in accordance with the SPD.

31. For in-network providers, the allowed amount is presumably "in accordance with the member's benefits agreement," but that agreement was not provided to BD. Moreover, not all in-network providers have the same agreements and, therefore, not all providers have the same fee agreements.

32. Since the "in-network rate" is not a fixed or known rate, the SPD's definition of the "member's benefits agreement" to an out-of-network provider is subject to ambiguity. It cannot be said that the amounts Highmark paid to LINA are the proper rates set out in the SPD or that the reimbursement to LINA was accurate.

7

33. At a minimum, to establish a proper amount under the "member's benefits agreement," Highmark must base it on what it contractually paid other in-network pediatric neurosurgeons with qualifications equal to or better than Dr. Schneider. These qualifications include board certifications, specialty training, outcome success, and hospital privileges. If Highmark were to find that it had no in-network pediatric neurosurgeon meeting these qualifications, it should pay at the billed amount because it has no in-network rate to pay.

34. Because Dr. Schneider was the only pediatric neurosurgeon with privileges at the Hospital who could perform the complex surgery that Emily required (other than two other surgeons at LINA), including any in-network neurosurgeon, Highmark should have defined Dr. Schneider as in-network provider and paid him at an in-network rate, if such a rate could be determined, or at full billed charges where, as here, it could not legitimately determine an in-network rate.

35. Highmark does not have any pediatric neurosurgeons in its network not only with Dr. Schneider's expertise to perform this surgery and privileges at the Hospital, but anywhere in Nassau County at all. Emily could not have had this surgery performed by a Highmark in-network pediatric neurosurgeon because there were none in Highmark's network in the entire County.

36. This is not surprising. There are only three pediatric neurosurgeons in Nassau County who can perform this complex pediatric neurosurgery, and all are associated with LINA. The procedural codes for which LINA billed Highmark are considered some of the most complex codes in pediatric neurosurgery.

37. Based on the above, and consistent with the terms of the SPD, Plaintiff should have been paid the in-network rate or, alternatively, the billed amount.

38. This is entirely consistent with NY Ins. Law § 4804(a), which states:

**Access to Specialty Care**

If an insurer offering a managed care product determines that it does not have a health care provider in the in-network benefits portion of its network with appropriate training and experience to meet the particular health care needs of an insured, the insurer shall make a referral to an appropriate provider, pursuant to a treatment plan approved by the insurer in consultation with the primary care provider, the non-participating provider and the insured or the insured's designee, at no additional cost to the insured beyond what the insured would otherwise pay for services received within the network.

39. LINA was the insured's designee. Highmark should have determined that it did not have an appropriate provider in its network and made a referral to the only appropriate provider, Dr. Schneider. It should have paid LINA the in-network rate for these procedures, which would have resulted in Emily incurring no additional costs other than the co-pay and deductible an insured would be liable to pay for in-network services.

40. NY Ins. Law § 4804(a) is consistent with the terms of the SPD and does not impose additional or inconsistent terms. Accordingly, it is not preempted by ERISA.

41. Alternatively, Highmark should have offered Plaintiff a Single Case Agreement. Such an agreement is common among insurers and out-of-network providers where the insurer does not have a provider in its network which can provide the required procedures or services for its member. It is a one-time agreement negotiated with the provider and does not encompass services beyond that provided to the single member. As such, it is a negotiated exception to the rates set out in the SPD governing out-of-network reimbursement.

42. Highmark also violated ERISA when it gave incorrect, unreasonable and invalid purported reasons for its under-reimbursements in its EOB and failed to provide any reason for its determination in its appeal response.

43. 29 C.F.R. § 2560.503-1(g) provides as follows:

9

> **Manner and content of notification of benefit determination.**
>
> (1) The plan administrator shall provide a claimant with written or electronic notification of any adverse benefit determination. Any electronic notification shall comply with the standards imposed by 29 CFR 2520 2520.104b-1(c)(1)(i), (iii), and (iv). The notification shall set forth, in a manner calculated to be understood by the claimant -
>
> (i) The specific reason or reasons for the adverse determination;
>
> (ii) Reference to the specific plan provisions on which the determination is based;
>
> (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;
>
> (iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review;
>
> (v) In the case of an adverse benefit determination by a group health plan -
>
> (A) If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request.

44.     Highmark provided none of the information required by 29 C.F.R. § 2560.5031(g), in violation of ERISA and the rules promulgated thereunder.

45.     LINA received an Assignment of Insurance Benefits from Emily's parent and an Appointment as Authorized Representative. It states in relevant part:

> **Assignment of Insurance Benefits—Appointment as Legal Authorized Representative**
>
> I hereby assign all applicable health insurance benefits and all rights and obligations that I and my dependents have under my health plan to Long Island Neurosurgical Associates, P.C. and their affiliated revenue management firm

> (collectively, hereinafter, "My Authorized Representatives") and I appoint them as my authorized representative with the power to:
>
> ■ File medical claims, appeals and grievances with the health plan
>
> ■ File appeals and grievances with the health plan
>
> ■ Institute any necessary litigation and/or complaints against my health plan naming me as plaintiff in such lawsuits and actions if necessary . . .
>
> ■ Discuss or divulge any of my personal health information or that of my dependents with any third party including the health plan

Emily further designated LINA as his Authorized Representative under 29 C.F.R. § 2560.5031(b)(4).

46.    LINA exhausted its administrative remedies.  Upon information and belief, the SPD requires two levels of appeals, both of which were made and denied.

### COUNT I

### CLAIM AGAINST HIGHMARK FOR UNPAID BENEFITS UNDER EMPLOYEE BENEFIT PLAN GOVERNED BY ERISA

47.    As the claims administrator for the Employer, Highmark is obligated to pay benefits to participants, beneficiaries and their assignees in accordance to the terms of the Plan, and in accordance with ERISA.

48.    Highmark violated its legal obligations under this ERISA-governed plan when it under-reimbursed LINA for the pediatric neurosurgical services it provided to Emily, an Employer beneficiary, in violation of the terms of the SPD and therefore in violation of ERISA § 502(a)(l)(B), 29 U.S.C. § 1132(a)(l)(B).

49.    LINA seeks unpaid benefits, prompt pay interest, and statutory interest back to the date LINA's claim was originally submitted to Highmark. It also seeks attorneys' fees, costs, prejudgment interest and other appropriate relief against Highmark.

## COUNT II

## CLAIM AGAINST REED SMITH LLC, FOR UNPAID BENEFITS UNDER EMPLOYEE BENEFIT PLAN GOVERNED BY ERISA

50. As the Plan Administrator and Plan Sponsor for the Plan, the Employer is obligated to pay benefits to Employer Plan participants, beneficiaries and their assignees in accordance to the terms of the Plan, and in accordance with ERISA. The Employer violated its legal obligations under this ERISA-governed plan when, through its Third-Party Administrator, Highmark, it under-reimbursed LINA for the surgical services in provided to Emily, a beneficiary of Employer, allegedly in violation of the terms of the SPD and therefore in violation of ERISA § 502(a)(l)(B), 29 U.S.C. § 1132(a)(l)(B).

51. LINA seeks unpaid benefits, prompt pay interest, and statutory interest back to the date LINA's claim was originally submitted. It also seeks attorneys' fees, costs, prejudgment interest and other appropriate relief against the Employer.

**WHEREFORE**, LINA demands judgment in its favor against Highmark and Reed Smith LLP as follows:

    (a)    Ordering Highmark and Reed Smith LLP to recalculate and issue unpaid benefits to LINA;

    (b)    Awarding LINA the costs and disbursements of this action, including reasonable attorneys' fees, costs and expenses in amounts to be determined by the Court;

    (c)    Awarding prompt pay interest;

    (d)    Awarding prejudgment interest; and

    (e)     Granting such other and further relief as is just and proper.

Dated: February 28, 2018

                                                                      NAN GEIST FABER, P.C.

                                                                       By: <u>/s/ Nan Geist Faber</u>
                                                                       *Attorney for Plaintiff*
                                                                       *Long Island Neurosurgical Associates, P.C.*
                                                                       996 Dartmouth Lane
                                                                       Woodmere, NY 11598
                                                                       T. (516) 526-2456
                                                                       nfaber@nangeistfaber.com

cc: Counsel of Record (via ECF)