```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
LONG ISLAND NEUROLOGICAL
ASSOCIATES, P.C.,

                    Plaintiff,                              MEMORANDUM AND ORDER
                                                            2:18-cv-81 (DRH)(AYS)

    - against –

HIGHMARK BLUE SHIELD and REED
SMITH LLP,

                    Defendants.
-------------------------------------------------------X
```

**APPEARANCES**

**NAN GEIST FABER, P.C.**
Attorney for Plaintiff
996 Dartmouth Lane
Woodmere, NY 11598
By: Nan Geist Faber, Esq.

**AXELROD LLP**
Attorney for Plaintiff
800 Third Avenue, Suite 2800
New York, NY 10022
By: Robert J. Axelrod, Esq.

**CHIESA SHAHINIAN & GIANTOMASI PC**
Attorneys for Defendants
11 Times Square, 31st Floor
New York, NY 10036
By: Adam K. Derman, Esq.
    Scott Craig Hollander, Esq.

**HURLEY, Senior District Judge:**

## INTRODUCTION

Plaintiff Long Island Neurological Associates, P.C. ("Plaintiff") brought this action

against Defendants Highmark Blue Shield ("Highmark") and Reed Smith LLP ("Reed Smith,"

collectively "Defendants") for under-reimbursement for surgical services pursuant to the Employment Retirement Income Security Act. (Am. Compl. ¶¶ 1, 8.)

Presently before the Court is Defendants motion to dismiss pursuant to Fed. R. Civ. P. ("Rule") 12(b)(1) and Rule 12(b)(6).

## BACKGROUND

The following relevant facts come from the Amended Complaint ("Am. Compl.") and are assumed true for purposes of this motion.

This matter concerns a 4-year old girl ("Patient") who is allegedly insured through a Group Benefits Program sponsored by Defendant Reed Smith. (Am. Compl. ¶ 1 – 2.) Defendant Highmark is the "Claims Administrator" and the "Third-Party Administrator" for Reed Smith's insurance plan ("Plan"). (*Id.*¶ 1, 12). On January 12, 2016, the Patient was admitted to Cohen Children's Medical Center in New Hyde Park ("Hospital") with multiple sutural synostosis and degenerating cranial deformity. (*Id.*¶ 3.) A physician, Dr. Schneider, examined the Patient and determined she required surgery to treat her condition. (*Id.*) Dr. Schneider performed the surgery the same day. (*Id.* ¶ 17.) Dr. Schneider was the only pediatric neurosurgeon with privileges at the Hospital who could perform the complex surgery the Patient required, which is to say that there were no "in-network" surgeons who could perform the surgery at the Hospital. (*Id.* ¶ 34.) In fact, Defendant Highmark has no in-network pediatric neurosurgeons anywhere in Nassau County. (*Id.* ¶ 35.)

Plaintiff subsequently submitted an invoice that it summarizes as follows: "(i) CPT Code 21175 with modifier 80 in the amount of $24,166.50, but Highmark allowed only $888.23 thereof; (ii) CPT Code 15732 (2 units at $16,500 each) in the total amount of $33,000, but Highmark allowed only $2,461.10 thereof; and (iii) CPT Code 61559 with a modifier 22 in the

amount of $66,000, but Highmark allowed only $5,489.70 thereof." (*Id.*) In other words, out of the $123,166.50 billed, the total amount allowed was $8,839.03. (*Id.* ¶ 19.) Defendant Highmark's explanation of benefits dated February 29, 2016 stated that Plaintiff was out of network and that the Patient was responsible for the amount not covered. (*Id.* ¶ 20.) Plaintiff filed an initial appeal on April 7, 2016, explaining that the rates were based on the "usual and customary treatment charges for the specialty and the geographic region where the treatment was provided." (*Id.* ¶ 21.) Plaintiff requested the applicable policy language that justified the reduction as well as the data used to establish the reduction rate. (*Id.*) Defendant Highmark never provided the additional documentation requested and denied the request for additional reimbursement. (*Id.* ¶ 22.)

Plaintiff filed a Second Level Appeal on October 7, 2016, reiterating that it had never received the applicable fee schedule or policy guidelines to support the payment method. (*Id.* ¶ 23.) Defendant Highmark denied the Second Level Appeal on October 7, 2016, again failing to provide any of the requested information. (*Id.* ¶ 25.) On January 6, 2017, Highmark sent a letter to Plaintiff indicating that the Patient was only entitled to two levels of appeal and that all appeals were exhausted. (*Id.* ¶ 25.) In this letter, Defendant Highmark further stated that when covered services are provided outside of the geographic area by non-participating providers, the Plan allowance is based upon the prices established by the local Highmark licensee. (*Id.*) Plaintiff alleges that Defendant Highmark established the rates. (*Id.*)

Around this time, Dr. Schneider sent a letter explaining the surgery to Defendant Highmark. (*Id.* ¶ 26.) On February 21, 2017, Defendant Highmark responded to Dr. Schneider's letter stating that the claim was reviewed and that the additional information submitted by Dr. Schneider did not substantiate the complexity or necessity for extended time to warrant

additional reimbursement.  (*Id.*)  In all of Defendant Highmark's communications with Plaintiff and its employees, Highmark never explained how it processed the claim or the terms of the Summary Plan Description ("SPD") that controlled.  (*Id.* ¶

On April 5, 2017, Plaintiff's outside counsel sent an appeal letter to Defendant Highmark requesting that it reprocess the claim.  (*Id.* ¶ 28.)  Defendant Highmark did not respond for almost eight months – finally sending a letter on December 4, 2017, stating that the claim was "processed correctly in accordance with the non-contracted provider allowance established under the member's benefits agreement[.]"  (*Id.*)  Highmark did not provide a copy of the referenced agreement.  (*Id.*)  At some time between the surgery in 2016 and the time this action was commenced, the Patient's parents signed an Assignment of Insurance Benefits that gave Plaintiff the right to file claims and appeals, and institute necessary litigation on the Patient's behalf.  (*Id.* ¶ 45.)  The Patient further designated Plaintiff her Authorized Representative under 29 C.F.R. § 2560.5031(b)(4).  (*Id.*)

Plaintiff commenced the instant action on December 8, 2017, by filing a Complaint in State Court.  On January 5, 2018, Defendant Highmark removed the action to Federal Court. Plaintiff filed an Amended Complaint on February 28, 2018, and Defendants Highmark and Reed Smith moved to dismiss the action on June 19, 2018.  On June 22, 2018, Plaintiff requested leave to file a sur-reply on the single issue of whether the Administrative Service Agreement ("ASA") is an ERISA Plan Document.  The Court granted such leave and Plaintiff filed its sur-reply on July 20, 2018.  The Court will analyze this threshold question first.

**DISCUSSION**

I.        Whether the ASA is a Plan Document

Defendants' entire argument advanced in support of this motion to dismiss hinges on their assertion that the anti-assignment provision in the ASA precludes assignment by the Patient of her rights to Plaintiff. (*See* Reply Mem. in Supp. [ECF No. 21] at 2.) Plaintiff asserts that the ASA was never distributed or available to the Patient or other Plan beneficiaries. (Sur-reply [ECF No. 24] at 3.) Defendants do not say otherwise in any of their papers. Moreover, Defendants effectively concede that there is *no* anti-assignment provision in the SPD that was provided to Plaintiff's family as beneficiaries of the Plan. Plaintiff, in turn, concedes that if there is a valid anti-assignment provision that is applicable, Plaintiff is barred from bringing the instant action. (*See* Mem. in Opp [ECF No. 20] at 4.) Thus, the determinative question in this matter is whether the anti-assignment provision in the ASA applies to the Patient's assignment of her rights and benefits under the Plan.

As an initial matter, the Court notes that there is a dispute over whether Third Circuit or Second Circuit case law should control. Defendants argue that the ASA provides that Pennsylvania substantive law should apply, so the Court should look to Third Circuit precedent. (Mem. in Supp. at 4.) Plaintiff, on the other hand, cites to Second Circuit precedent throughout its papers. (*See, e.g.*, Mem. in Opp. at 4 et seq.) Neither side provides the Court with any authority as to whether the Pennsylvania choice of law provision extends to how this Court should interpret an ERISA document – an inquiry that falls squarely within the purview of federal law. However, the Court need not decide this issue for apparently neither Circuit has decided the question of whether an ASA is a plan document for these purposes.

The Third Circuit has recently held that "anti-assignment clauses in ERISA-governed health insurance plans as a general matter are enforceable." *Am. Orthopedic & Sports Medicine v. Independence Blue Cross Blue Shield*, 890 F.3d 445, 453 (3d Cir. 2018). Likewise, the Second Circuit has held that "an assignment is ineffectual if the [ERISA benefit] plan contains an unambiguous anti-assignment provision." *McCulloch Orthopaedic Surgical Svcs., PLLC v. Aetna Inc.*, 857 F.3d 141, 147 (2d Cir. 2017) (quoting *Physicians Multispecialty Grp. v. Health Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1295 (11th Cir. 2004)) (internal quotation marks omitted). However, neither the Second nor the Third Circuit has decided whether an ASA is a "Plan Document" under ERISA such that an anti-assignment provision in an ASA would be binding on Plan participants. Accordingly, the Court looks elsewhere for guidance.

For ERISA-purposes, a plan document "is one which a plan participant could read to determine his or her rights or obligations under the plan" and not one that merely "memorialize[s] the obligations [the administrator] and Defendant Company owed to each other." *Local 56, United Food and Commercial Workers Union v. Campbell Soup Co.*, 898 F. Supp. 1118, 1136 (D.N.J. 1995); *Askew v. R.L. Reppert Inc.*, 2016 WL 447050 (E.D. Pa. Feb. 5, 2016) *aff'd*, 721 F. App'x 177 (3d Cir. 2017) (quoting the same); *see also Normann v. Amphenol Corp.*, 956 F. Supp. 158, 162 (N.D.N.Y. 1997) (quoting *Curtiss-Wright Corp. v. Schoonejongen*, 115 S. Ct. 1223, 1230 (1995); 29 U.S.C. § 1102(a)(1) & (b)4(4)) ("ERISA requires that '[e]very employee benefit plan . . . be established and maintained pursuant to a written instrument' and 'specify the basis on which payments are made . . . from the plan.'[] The purpose of the written documents requirement is to allow an employee 'on examining the plan documents, [to] determine exactly what his rights and obligations are under the plan'")).

The Seventh Circuit has directly considered the question at bar and decided that an "ASA is not a 'plan document' for purposes of holdings its terms against a plan participant or beneficiary." *Fritcher v. Health Care Service Corp.*, 301 F.3d 811, 817 (7th Cir. 2002) (citing *Local 56*, 898 F. Supp. at 1136). The First Circuit has also considered whether the Court could look to an ASA to cure ambiguity, and found that "[a]ny terms that concern the relationship between the claims administrator and the beneficiaries cannot be held against the beneficiaries where, as here, the terms appear in a financing arrangement between the employer and the claims administrator that was never seasonably disseminated to the beneficiaries against whom enforcement is sought." *Stephanie C. v. Blue Cross Blue Shield of Mass. HMO Blue, Inc.*, 813 F.3d 420, 429 (1st Cir. 2016) (citing *Fritcher*, 301 F.3d at 817).

Other district courts across the country have similarly found that an ASA or ASA-type agreement is not a plan document. *See, e.g.*, *Miller v. PNC Financial Svcs. Group, Inc.*, 278 F. Supp.. 3d 1333, 1350 (S.D. Fl. 2017) (citing *Fritcher* for the assertion that an ASA is not a plan document and therefore could not constitute a grant of discretion); *Erlandson v. Liberty Life Assur. Co. of Boston*, 320 F. Supp. 2d 501, 509 (N.D. Tex. 2004) (explaining that an administrative services contract that was not provided to plan participants could not, "therefore, be considered a part of an ERISA plan"); *Mirick v. Prudential Ins. Co. of Am.*, 100 F. Supp. 3d 1094, 1097 (W.D. Wash. 2015) (An "ASA [is] generally not considered part of the ERISA plan"); *Rada v. Cox Enterprises, Inc.*, 2012 WL 3262867, at *4 (D. Nev. Aug. 7, 2012) ("Aetna contends that its termination should be reviewed under an abuse of discretion standard because of language in the Administrative Services Contract between Aetna and [the employer] conferring discretionary power upon Aetna. . . . The Administrative Services Contract cited to by Aetna is not part of the plan, integrated or otherwise, and is not distributed to employees. It does

not confer discretionary authority on Aetna for reviewing Plaintiff's claims"); *Trustees of Colorado Laborers Health & Welfare Trust Fund v. Am. Ben. Plan. Adm'rs, Inc.*, 2006 WL 2632308, at *5 (D. Colo. Sept. 13, 2006) ("While Defendant is named as a 'fiduciary' in the ASA, such an administrative services agreement is not a 'plan instrument.' A plan instrument is a written document that establishes and maintains an ERISA plan. *See* ERISA § 403(a)(1) . . . In the present case, two plan instruments exist: the original Trust Agreement and the Restated Plan Document. Significantly, Defendant is not named as a fiduciary in either instrument. . . . Based on the evidence presented, the court rejects Plaintiffs unsupported assertion that Defendant is a 'named fiduciary' under ERISA § 402(a)") (internal citations omitted); *L & W Associates Welfare Ben. Plan v. Estate of Wines ex rel. Wines*, 2014 WL 117349, at *8 (E.D. Mich. Jan. 13, 2014) ("The Court rejects the Estates' suggestion that the [Administrative Services Contract ("ASC")] is the underlying ERISA plan document. The ASC is a contract between BCBSM [the claims administrator] and L & W that governs the relationship between those parties. It contains no benefit-defining language, does nothing to apprise plan participants of their benefits or rights under the Plan and is not a Plan document"); *Briscoe v. Preferred Health Plan, Inc.*, 2008 WL 4146381, at *3 (W.D. Ky. Sept. 3, 2008) ("[T]he Plaintiffs urge, we think correctly, that the Administrative Services Agreement which was entered into between [the employer] and [the claims administrator] for the management of the Plan is not a Plan Document. It is a private contract between the employer and its third-party administrator"); *Wimmer v. Hewlett-Packard Co.*, 2009 WL 10670689, at *3 (N.D. Ga. Apr. 21, 2009) (discussing the disclosure of documents during discovery and noting in dicta that "the ASA is not a standard ERISA plan document insofar as it does not establish or delineate the rights of the Plan beneficiaries; it merely defines the contractual relationship between [the employer] and [the claims administrator]"). Reading

these cases together, there appears to be a consensus that an ASA is not an ERISA plan document and, therefore, a Plan beneficiary is not bound by its terms.

Here, Defendants insist that the anti-assignment clause in the ASA prohibits the Patient from assigning her rights under the Plan even though there is no such clause in the SPD, or presumably in any other ERISA Plan document based on Defendants' failure to demonstrate otherwise. Defendants cite to two cases in the Third Circuit that have upheld anti-assignment provisions, but they are readily distinguishable as the relevant provisions are not <u>solely</u> memorialized in ASAs. *See Lehigh Valley Hosp. v. UAW Local 259 Social Security Dep't.*, 1999 WL 600539, at *3 (E.D. Pa. Aug. 10, 1999) (upholding an anti-assignment provision in a plan document); *Atlantic Spinal Care v. Highmark Blue Shield,* 2013 WL 3354433, at *2 (D.N.J. July 2, 2013) (dismissing an action in which the patient assigned her rights where "the applicable health benefits plan contains a clear anti-assignment provision"). Accordingly, the Court rejects Defendants' argument and finds—as so many other courts have—that the ASA is not an ERISA document and is not binding on the Patient.

II. Rule 12(b)(1) Motion to Denied

   A. Rule 12(b)(1) Legal Standard

A case may properly be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000). "In contrast to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a 'plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.'" *MacPherson v. State St. Bank & Trust Co.*, 452 F. Supp. 2d 133, 136 (E.D.N.Y. 2006) (quoting *Reserve Solutions Inc. v. Vernaglia*, 438 F. Supp. 2d 280, 286 (S.D.N.Y. 2006)), *aff'd*, 273 F.

App'x 61 (2d Cir. 2008); *accord Tomaino v. United States*, 2010 WL 1005896, at *1 (E.D.N.Y. Mar. 16, 2010). "In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider affidavits and other materials beyond the pleadings to resolve jurisdictional questions." *Cunningham v. Bank of New York Mellon, N.A.*, 2015 WL 4101839, * 1 (E.D.N.Y. July 8, 2015) (citing *Morrison v. Nat'l Australia Bank, Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008)).

B. The Motion to Dismiss Pursuant to Rule 12(b)(1) is Denied

Defendants argue that the Court should dismiss this action pursuant to Rule 12(b)(1) because Plaintiff lacks standing to bring this suit in light of the ASA's anti-assignment provision. The Court has already found that this anti-assignment provision is not binding on the Patient. Thus, when the Patient assigned her rights to Plaintiff, Plaintiff was vested with standing to bring the instant action. As such, Defendants' motion to dismiss pursuant to Rule 12(b)(1) is denied.

III. Rule 12(b)(6) Motion to Dismiss

Defendants state in their introduction to their Memorandum in Support that they also move to dismiss pursuant to Rule 12(b)(6). However, Rule 12(b)(6) is never mentioned again in either their Memorandum in Support or in their Reply Memorandum in Further Support, and they do not advance any arguments in support of such motion. As Defendants abandoned their motion to dismiss pursuant to Rule 12(b)(6), it is denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6) is denied in its entirety.

**SO ORDERED.**
Dated: Central Islip, New York
March 20, 2019

/s/
Denis R. Hurley
United States District Judge